```
                                                        ┌──────────────────────────────────┐
                                                        │ USDC SDNY                        │
                                                        │ DOCUMENT                         │
UNITED STATES DISTRICT COURT                            │ ELECTRONICALLY FILED             │
SOUTHERN DISTRICT OF NEW YORK                           │ DOC #: _____         │
------------------------------------------------------X │ DATE FILED: 3/6/2023             │
                                                :       └──────────────────────────────────┘
                                                :
PETER RODRIGUEZ,                                :
                                                :
                        Plaintiff,              :            1:21-cv-1384-GHW
                                                :
            -v -                                :       MEMORANDUM OPINION &
                                                :              ORDER
CITY OF NEW YORK, et al.,                       :
                                                :
                                                :
                        Defendant.              :
------------------------------------------------------X
```

GREGORY H. WOODS, District Judge:

In the early hours of January 13, 2021, the sound of a fire extinguisher awakened Peter

Rodriguez in his cell on Rikers Island. Smoke started to enter his cell. It abated shortly thereafter,

but not before Mr. Rodriguez, an asthmatic, had inhaled the smoke. Mr. Rodriguez sought and

obtained medical treatment for his exposure to the smoke the same day. Mr. Rodriguez brought this

action against Defendants under 42 U.S.C. § 1983, claiming that Defendants violated his

constitutional rights by exhibiting deliberate indifference to medical issues caused by the smoke. In

this opinion the Court does not reach the merits of Mr. Rodriguez's claims, which are fiercely

contested by Defendants. Because Mr. Rodriguez was required to exhaust administrative remedies

before initiating this lawsuit but failed to do so, Defendants' motion for summary judgment is

granted.

## I.   BACKGROUND

### a.   The Fire and its Aftermath

On January 13, 2021, Mr. Rodriguez was housed in cell 45 at the George R. Vierno Center

on Rikers Island. Statement of Undisputed Facts ("SUF") ¶¶ 1–3, Dkt. No. 67. He woke up early

that morning to the sound of a fire extinguisher in cell 49—four cells away. *Id.* Smoke had come

into Mr. Rodriguez's cell "from the slot in his cell door, under the door, through the sides of the door, and from the top of the door." *Id.* ¶ 4. He called for medical attention as smoke filled his cell. *Id.* ¶ 5; Def.'s Mot. for Summ. J., Ex. A at 24:13–20, Dkt. No. 65-1 ("Rodriguez Dep."). "By 5:00 a.m., the smoke in Plaintiff's cell was abated . . . . By 6:17 a.m., the area was free of smoke." SUF ¶¶ 9–10.

Mr. Rodriguez testified that the smoke left soot on his clothing and throughout his cell. *Id.* ¶¶ 11, 14. However, video recordings of Mr. Rodriguez and his cell immediately following the incident showed no sign of soot on him or in his cell. *Id.* ¶¶ 15, 19.

Mr. Rodriguez has asthma. Mr. Rodriguez had prescriptions for two inhalers, both of which he could keep inside his cell, but he is unsure if he had his inhalers or used them on the day of the fire. *Id.* ¶¶ 7–8. Mr. Rodriguez requested medical attention following the fire. *Id.* ¶ 18. A few hours after the fire, at 2:29 p.m., a doctor attended Mr. Rodriguez at his cell. *Id.* ¶ 21. The doctor gave him a refill of his inhaler. *Id.* ¶¶ 22–24. By that time, Mr. Rodriguez stated he had mostly recovered from the symptoms he was experiencing, "except for the 'nose burning'" and "difficulties breathing." *Id.* ¶ 25; Rodriguez Dep. at 63:6–7. When Plaintiff saw another doctor several days later, on January 17, 2021, he attributed his continuing symptoms to another fire that happened on January 16, 2021, rather than the January 13, 2021 fire that is at issue in this action. SUF ¶ 26.

### b. The Grievance Process

The Department of Corrections maintains a grievance procedure that an inmate must follow before filing a lawsuit. *Id.* ¶ 27. The first step in that four step process requires the inmate to file a written grievance with the Office of Constituent Grievance Services, or, alternatively, to call in a "311 complaint." *Id.* Mr. Rodriguez called 311 to file a complaint about the fire and its effects on him on January 13, 2021—the date of the incident. *Id.* ¶ 28. That same day, he filed a paper grievance seeking adequate medical care, asserting that he was "exposed to smoke and carbon

monoxide" from the fires set between 2:00 a.m. and 5:00 a.m.  Def.'s Mot. for Summ. J., Ex. B at 11, Dkt. No. 65-2 ("Ex. B").  Mr. Rodriguez's 311 complaint was forwarded to Correctional Health Services Patient Relations, and then to the medical team at the George R. Vierno Center.  Def.'s Mot. for Summ. J., Ex. G ¶ 7, Dkt. No. 65-7 ("Lin Decl.").  The paper grievance was returned to Mr. Rodriguez for failure to comply with Riker's Inmate Grievance Resolution Program (the "IGRP") because it was duplicative of the 311 complaint.  *Id.* ¶ 8.  Mr. Rodriguez never received a response to his 311 complaint.  Rodriguez Dep. at 64:11–14.  He never appealed the denial of his paper grievance, and he never followed up about the status of his 311 complaint.  Lin Decl. ¶ 9; SUF ¶ 32.

## II.    PROCEDURAL HISTORY

Mr. Rodriguez filed this lawsuit on February 17, 2021.  Dkt. No. 2.  For an extended period, the parties conducted discovery under the supervision of the Court.  On November 1, 2022, following the completion of discovery, Defendants filed their motion for summary judgment, together with supporting documents.  Dkt. Nos. 63, 65–67.  Defendants also served Mr. Rodriguez with the notice required by Local Rule 56.2.  Dkt. No. 64.  That notice advised Mr. Rodriguez, among other things, that "THE CLAIMS YOU ASSERT IN YOUR COMPLAINT MAY BE DISMISSED WITHOUT A TRIAL IF YOU DO NOT RESPOND TO THIS MOTION . . . ." *Id.*

On November 9, 2022, after Defendants filed their motion, the Court held a conference with Mr. Rodriguez and counsel for Defendants to discuss the briefing schedule for the motion. The Court asked Mr. Rodriguez how much time he needed in order to respond to the motion and then set a schedule that was responsive to his input:  Mr. Rodriguez's opposition was to be filed no later than January 3, 2023—over two months after the filing date—and Defendants' reply was due three weeks thereafter.  Dkt. No. 69.  During the conference, the Court advised Mr. Rodriguez that, if he failed to file an opposition to the motion, the Court would be required to decide it unopposed.

On January 18, 2023, Mr. Rodriguez filed a letter requesting that the Court modify the briefing schedule to extend his deadline to respond.  Dkt. No. 72.  He asked that the Court give him an additional 60 days to respond.  The Court granted that request in part, extending the deadline for Mr. Rodriguez to file an opposition to Defendants' motion for summary judgment until February 3, 2023.  Dkt. No. 73.  The Court's January 24, 2023 order stated that "failure to file a timely opposition will result in the Court considering the summary judgment motion unopposed."  *Id.*  On February 24, 2023, the Court received a January 30, 2023 request by Mr. Rodriguez to dismiss this case without prejudice because "it would be impossible for Plaintiff to be able to continue litigating the matters the Plaintiff has filed with the Court."[1]  Dkt. No. 75.  Mr. Rodriguez has not responded to Defendants' summary judgment motion.  He has not requested an extension of time to file an opposition, and the Court would not grant a request to extend briefing of this motion for an indefinite period.  Accordingly, the Court now takes up Defendants' motion as unopposed.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of showing its entitlement summary judgment.  *See id.* at 256.

---

[1] Mr. Rodriguez's letter is not an effective stipulation of dismissal.  Federal Rule of Civil Procedure 41(a)(1)(A)(i) permits a plaintiff to stipulate to the dismissal of an action unilaterally, but only "before the opposing party serves either an answer or a motion for summary judgment."  Fed. R. Civ. P. 41(a)(1)(A)(i).  Defendants have done both.  *See* Dkt. Nos. 16, 63.

In evaluating a motion for summary judgment, the Court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trustees of Columbia Univ.*, 131 F.3d 305, 312 (2d Cir. 1997)). "[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)). The Court's job is not to "weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citing *Anderson*, 477 U.S. at 249). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002) (citing *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000)).

In considering an unopposed motion for summary judgment, the Court "must be satisfied that the citation to evidence in the record supports the [Rule 56.1 statement]," *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004), but may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it," Fed. R. Civ. P. 56(e). The Court, moreover, may not simply enter a default judgment but "must examine the movant's statement of undisputed facts and the [proffered] record support and determine whether the movant is entitled to summary judgment." *Jackson v. Federal Express*, 766 F.3d 189, 197 (2d Cir. 2014). However, the Court need not "write [an] elaborate essay[ ] using talismanic phrases. . . . All that is required is a record sufficient to allow an informed appellate review." *Id.*

## IV.    DISCUSSION

Under the Prisoner Litigation Reform Act (the "PLRA"), 42 U.S.C. § 1997e, a prisoner may not bring an action related to prison conditions without first exhausting all available administrative remedies.  42 U.S.C. § 1997e(a).  Accordingly, Mr. Rodriguez was required exhaust the administrative remedies available in his facility before filing this action.  Because the record establishes that he failed to do so, Defendants are entitled to summary judgment.

### a.   Requirement of Exhaustion Under the PLRA

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* "The PLRA requires 'proper exhaustion' of administrative remedies, meaning exhaustion in 'compliance with an agency's deadlines and other critical procedural rules.'" *Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corrs. & Cmty. Supervision*, 16 F.4th 67, 81 (2d Cir. 2021).  "[A]side from the 'significant' textual qualifier that 'the remedies must indeed be "available" to the prisoner,' there are 'no limits on an inmate's obligation to exhaust . . . .'" *Hayes v. Dahlke*, 976 F.3d 259, 269 (2d Cir. 2020) (internal quotation marks omitted) (alterations in original) (quoting *Williams v. Correction Officer Priatno*, 829 F.3d 118 (2d Cir. 2016).  "In other words, to satisfy the exhaustion requirement, an inmate must use all available administrative mechanisms, including appeals, 'through the highest level for each claim.'" *Ford v. Aramark*, No. 18-CV-2696 (NSR), 2020 WL 377882, at *4 (S.D.N.Y. Jan. 23, 2020) (quoting *Varela v. Demmon*, 491 F. Supp. 2d 442, 447 (S.D.N.Y. 2007)).

"Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016).  "[A]n administrative remedy is *de facto* unavailable and, thus, exhaustion is not required:  (1) where the process 'operates as a simple dead end—with officers

unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) where the process is 'so opaque that it becomes, practically speaking, incapable of use'; and (3) 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Saeli v. Chautauqua County*, 36 F.4th 445, 453 (2d Cir. 2022) (quoting *Ross*, 578 U.S. at 643–44 (2016)).

The administrative review process requiring exhaustion is "defined not by the PLRA, but by the prison grievance process itself"—that is, the rules of the particular institution where the inmate is housed govern any assessment of administrative exhaustion. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "At Rikers Island, grievance procedures are governed by the [IGRP]." *Hickman v. City of New York*, No. 20-cv-4699, 2021 WL 3604786, at *3 (S.D.N.Y. Aug. 12, 2021).

### b. The IGRP Process

The IGRP outlines a four-step process that inmates must follow to submit and appeal a grievance. *See Pizarro v. Ponte*, No. 17-cv-4412, 2019 WL 568875, at *4 (S.D.N.Y. Feb. 11, 2019). The version of the IGRP effective as of December 10, 2018 establishes the following procedure: First, the aggrieved person may submit a grievance to the Office of Constituent and Grievance Services (the "OCGS"). N.Y.C. Dep't of Corr., Directive 3376R-A, § V.F, H (December 10, 2018), https://www1.nyc.gov/assets/doc/downloads/directives/Directive_3376R-A.pdf. The Grievance Coordinator must propose a resolution within seven business days and meet with the inmate to review the proposed resolution. *Id.* § VI.A.1. Second, if the aggrieved person is not satisfied with the OCGS's proposed resolution, the aggrieved person may appeal to the facility's Commanding Officer. *Id.* §§ VI.A.6.a.ii, VI.A.7–7.a. The OCGS must forward the appeal to the Commanding Officer within one business day, and the Commanding Officer must render a disposition within five business days of receiving it. *Id.* §§ VII.A–B. Third, if the aggrieved person is not satisfied with the Commanding Officer's disposition, the aggrieved person may appeal to the facility's Division Chief

within two days.  *Id.* § VII.D.  The OCGS must forward the appeal to the Division Chief within one

business day, and the Division Chief must render a disposition within five business days after

receiving it.  *Id.* § VIII.A, B.  Fourth, if the aggrieved person is not satisfied with the Division

Chief's disposition, the aggrieved person may appeal to the Central Office Review Committee

("CORC") within two days.  *Id.* §§ VIII.B, IX.  The OCGS must forward the appeal to the Director

of Constituent and Grievance Services within one business day, and the Central Office Review

Committee must generally render a disposition within ten business days of receiving it.  *Id.* § IX.B,

D–F.

Of particular significance in this case, "[i]f the inmate does not receive a timely disposition at

any stage of the [IGRP] process, the inmate may submit a request for an appeal . . . .  Such an appeal

shall be submitted no later than ten (10) business days following the date upon which a response was

due from the Department."  *Id.* § XI.B.4.

### c.  Analysis

Mr. Rodriguez failed to follow the grievance process made available to inmates at Rikers

Island.[2]  He completed the first step of the grievance process when he filed his initial paper

grievance with the OCGS and called 311 to file a complaint on January 13, 2021.  However, Mr.

Rodriguez did not complete any of the other steps required by the IGRP.  He did not resubmit his

paper grievance or appeal its denial as duplicative.  SUF ¶¶ 30, 32.  But the IGRP required that he

take those steps.  *See* IGRP §§ V.H, VI.A.7, VI.A.7.a.  The facility failed to respond to Mr.

Rodriguez's 311 call.  However, Section XI.B.4 of the IGRP required that he follow up with respect

to the unanswered complaint.  *Id.* ¶¶ 31–32.  *See Pizarro*, 2019 WL 568875, at *5 ("Failing to pursue a

grievance for which no response is received is not excused.");  *Mena v. City of New York*, No. 13-cv-

---

[2] In the absence of an opposition, there is no evidence before the Court that the established grievance procedure at
Rikers Island was *de facto* unavailable.

2430, 2016 WL 3948100, at *3 (S.D.N.Y. July 19, 2016) (collecting cases) ("[T]he law is well-settled that the failure to take an available administrative appeal, even when the initial grievance receives no response, constitutes a failure to exhaust available administrative remedies.") (internal quotation marks omitted).  Accordingly, he did not get beyond step one of the IGRP's four-step grievance process.  Because the undisputed evidence shows that Mr. Rodriguez failed to exhaust his administrative remedies, the Court must grant Defendants' motion for summary judgment.

### V.   CONCLUSION

For the reasons described above, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment for Defendants, to terminate all pending motions and to close this case.

SO ORDERED.

Dated:  March 6, 2023
New York, New York

_____
GREGORY H. WOODS
United States District Judge

9